No. 22153.

STATE BOARD OF COSMETOLOGY *v.* JEAN MADDUX AND
GERALD MADDUX, D/B/A SOUTHERN COLORADO
BEAUTY COLLEGE.
(428 P.2d 936)

Decided May 15, 1967.     Opinion modified and as modified adhered
to and petition for rehearing denied July 24, 1967.

551

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, WILLIAM E. TUCKER, Assistant, CLIFTON A. FLOWERS, Special Assistant, for plaintiff in error.

MORRIS RIFKIN, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS writ of error is to test the validity of a license revocation made by the State Board of Cosmetology

against Jean and Gerald Maddux, d/b/a Southern Colorado Beauty College in the City of Pueblo.

The record discloses that the Madduxes, after being licensed, were served in 1964 with a written notice of ten purported violations of the board's rules in the operation of their college. We note that two of the purported violations were of C.R.S. '53, 32-1-1 and 32-1-4 (now C.R.S. 1963, 32-1-1 and 4), and the other eight were of specified rules of the board adopted by virtue of the authority granted it under 32-1-18.

The Madduxes denied the charges at a hearing before the board and again in the trial court where they also asserted that the statute was unconstitutional because of a purported lack of statutory standards in section 18. The trial court upset the license revocation by the board when it held the act unconstitutional for that reason.

Although several grounds are urged as error by the board, we need only consider two, viz.:

(1) That the trial court erred in holding section 18 unconstitutional as failing to establish any rule or guide for the revocation of a license; and,

(2) That even if no standards are provided by the act, nevertheless, the board has an inherent power to revoke or suspend a license, for good cause, without statutory authority.

A reading of the entire chapter 32 discloses the following pertinent wording:

"No beauty school shall be granted a certificate of registration unless it shall attach to its staff as a consultant, a person licensed by this state to practice an unlimited or limited branch of medicine, and employ and maintain a sufficient number of competent instructors, registered as such, and require a school term of training of not less than one thousand hours for a complete course comprising the majority of the practices, and a proportional number of hours as approved by the board, for any one or a combination of the practices of cosmetology, to include practical demonstrations, written

or oral tests, and practical instructions in sanitation, sterilization, and the use of antiseptics, cosmetics and electrical appliances, consistent with the practical and theoretical requirements as applicable to cosmetology." (C.R.S. 1963, 32-1-4)

And we note that section 18 in part grants the board:

"* * * the power to revoke and suspend certificates, supervise and inspect beauty schools and beauty shops upon proof of violation of the rules and regulations established by the board."

In the instant case, the Madduxes were cited before the board

"* * * for having violated the Rules and Regulations governing the teaching and practicing of cosmetology in the State of Colorado, as adopted by the State Board of Cosmetology effective February 1, 1962, and the provisions of C.R.S. '53, 32-1-1 etc. * * *."

The particulars of the alleged violations in part specifically concerned breaches of rules directly related to the statutory requirements set forth in C.R.S. 1963, 32-1-1 and 4, such as a failure to have the proper number of licensed instructors; a failure to include written and practical instructions; in permitting an unlicensed person, who was not a student, to do professional work; and in permitting unlicensed instructors to teach.

As we read the entire act, we believe that it adequately provides standards and guidelines under which the board could and did promulgate and adopt its rules — and which rules these defendants in error were found to have violated, after a hearing before the board.

In statutes of this kind it is not practical or realistic to expect the legislature to spell out in minute detail, for example, what shall be contained in each written and oral test. The types of guidelines laid down in section 4 are adequate in this case for the board, with its expertise, to formulate detailed regulations *within the scope of section 4 and of the authority given it.* For

a recent detailed comment by this court on the principles of the delegation of legislative power, see *Asphalt Paving Co. v. Board of County Commissioners*, 162 Colo. 254, 425 P.2d 289 (1967).

We turn next to the question as to whether the board had inherent power to revoke the Madduxes' license for good cause shown after a fair hearing. Again, under the facts of this case, we hold it had that power. As we read the act, the Madduxes' school was required to have certain minimum qualifications to be licensed. Even though C.R.S. 1963, 32-1-26 provides misdemeanor penalties for the violation of chapter 32, we do not deem such to be the exclusive penalty that can be imposed against those who fail to maintain the required minimum standards. To so hold would mean that our citizens would be without protection in a matter of public health and safety because a violator could keep his establishment open merely by paying an occasional fine or by having others operate his school during his incarceration. Cf. *Cornell v. Reilly*, 127 Cal. App. 2d 178, 273 P.2d 572 (1954); *State v. West Virginia Racing Commission*, 133 W. Va. 179, 55 S.E.2d 263 (1949); *Greater New York Athletic Club v. Wurster*, 19 Misc. 443, 43 N.Y.S. 703 (1897); *appeal dismissed* 16 App. Div. 631, 44 N.Y.S. 1118 (1897).

It is often said that the power to grant a license also contains the power to revoke it. Though we have held that such is not a naked power, at least in certain types of cases where a property right is involved, *e.g.*, *Prouty v. Heron*, 127 Colo. 168, 255 P.2d 755 (1953); *Wilson v. Denver*, 65 Colo. 484, 178 Pac. 17 (1919); and see 53 C.J.S., *Licenses* § 44a; nevertheless, such power obviously exists where, as here, it is necessary for the protection of the public interest. Of course, such a revocation cannot be arbitrary; and it must be for good cause shown after due notice and fair hearing in accordance with constitutional due process. From the record before us we cannot state that a fair hearing

was not had in this case. No evidence appears in the record of proceedings in the trial court on that issue and it was not raised in the briefs filed in this court. We thus hold that the board was justified in revoking the Madduxes' license either for the violation of its rules and regulations, as charged, or under its inherent power so to do under the police power of the state for the protection of the public weal.

The judgment is reversed with directions to the trial court to vacate its judgment and to affirm the order of the board.