No. 27933
No. 27892

The People of the State of Colorado ex rel. J. E. Losavio, Jr., District Attorney within and for the Tenth Judicial District of the State of Colorado v. J. L., a Witness before the 1977 Pueblo County Statutory Grand Jury

(580 P.2d 23)

Decided June 5, 1978.                    Rehearing denied July 10, 1978.

J. E. Losavio, Jr., District Attorney, Warren T. Marshall, Deputy, for plaintiff-appellant.

Darol C. Biddle, for defendant-appellee.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This appeal was taken pursuant to the provisions of section 16-12-102, C.R.S. 1973. The district court, in construing section 16-5-204(4)(d), C.R.S. 1973 (1977 Supp.), found that portion of the statute unconstitutional which provides that "an attorney present in the grand jury room shall take an oath of secrecy." We reverse the trial court.

The issues in this case involve the constitutionality of section 16-5-204(4)(d), C.R.S. 1973 (1977 Supp.):

"(d) Any witness subpoenaed to appear and testify before a grand jury or to produce books, papers, documents, or other objects before such grand jury shall be entitled to assistance of counsel during any time that such witness is being questioned in the presence of such grand jury, and counsel

may be present in the grand jury room with his client during such questioning. However, counsel for the witness shall be permitted only to counsel with the witness and shall not make objections, arguments, or address the grand jury. Such counsel may be retained by the witness or may, for any person financially unable to obtain adequate assistance, be appointed in the same manner as if that person were eligible for appointed counsel. An attorney present in the grand jury room shall take an oath of secrecy. If the court, at an in camera hearing, determines that counsel was disruptive, then the court may order counsel to remain outside the courtroom when advising his client. No attorney shall be permitted to provide counsel in the grand jury room to more than one witness in the same criminal investigation, except with the permission of the grand jury."

■ A close reading of section 16-5-204(4)(d), C.R.S. 1973 (1977 Supp.), reveals that the General Assembly intended to expand the protections afforded witnesses before grand juries, and, at the same time, to insure the continued secrecy of the grand jury process. The statute grants grand jury witnesses the right to have counsel present in the grand jury room during questioning and extends that right to all grand jury witnesses, including those financially unable to retain private counsel. However, in provisions designed to preserve the secrecy of the grand jury, attorneys present in the grand jury room are required to take the traditional oath of secrecy and are prohibited from providing counsel to more than one witness in a single criminal investigation, except with the permission of the grand jury.

The trial court held that the attorney's oath requirement contained in section 16-5-204(4)(d), C.R.S. 1973 (1977 Supp.), was constitutionally infirm on three grounds. First, the oath requirement was held to be violative of the equal protection clause of the Fourteenth Amendment. Secondly, the provision was held to violate a grand jury witness' right to the effective representation of counsel of his own choice. And finally, the oath requirement was declared to be overbroad in violation of due process guarantees.

Before addressing the trial court's conclusion, we are confronted with a threshold question concerning the possible existence and extent of a grand jury witness' right to counsel prior to the enactment of section 16-5-204(4)(d), C.R.S. 1973 (1977 Supp.). This inquiry is crucial to a proper determination of this case, in light of the fact that the trial court implicitly assumed that the prior practice of permitting grand jury witnesses to absent themselves during questioning to consult with counsel outside the confines of the grand jury room remains available.

■ Under well-established principles of constitutional law, grand jury witnesses cannot insist upon the presence of counsel in the grand jury room. *United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); *In re Groban,* 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957); *People v. Downer,* 192 Colo. 264, 557 P.2d 835 (1976). In

*United States v. Mandujano, supra,* the plurality pointed out that:

"Respondent was also informed that if he desired he could have the assistance of counsel, but that counsel could not be inside the grand jury room. That statement was plainly a correct recital of the law. No criminal proceedings had been instituted against respondent, hence the Sixth Amendment right to counsel had not come into play. . . ."

The established practice of permitting access to counsel also lacks a constitutional foundation. In *United States v. Daniels,* 461 F.2d 1076 (5th Cir. 1972), the court rejected an indigent witness' contention that he was entitled to appointed counsel outside the grand jury room:

"We deal first with the claim to right of counsel. First, it is clear there is no *right to counsel* for witnesses appearing before a grand jury. In re Groban, 352 U.S. 330, 333, 77 S.Ct. 510, 1 L.Ed.2d 376, 380 (1957). Daniels concedes as much, but argues that when an indigent witness is advised that he may have an attorney present, he must also be advised that if he is unable to provide his own counsel, one will be appointed for him free of cost. There is simply no such requirement. The need to advise a defendant of his right to appointed counsel arises only at certain critical stages of criminal proceedings. Daniels was not under indictment when he appeared; he was only a witness. Merely because a grand jury or other administrative body has chosen to permit a witness to retain his own counsel is not controlling." (Footnote omitted.)

Several courts, however, have recognized the accepted practice of permitting grand jury witnesses access to counsel outside the grand jury room and have incorrectly referred to such an opportunity as a "right."[1] *E.g., United States v. Capaldo,* 402 F.2d 821 (2d Cir. 1968), *cert. denied,* 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969); *United States v. De-Sapio,* 299 F.Supp. 436 (S.D.N.Y. 1969).

■ The inescapable conclusion required by the established case law is that courts have chosen to afford grand jury witnesses the opportunity to consult with an attorney outside the grand jury room concerning his privilege against self-incrimination. *See Silbert, Defense Counsel in the Grand Jury — The Answer to the White Collar Criminal's Prayers,* 15 *Am.Crim.L.Rev.* 293 (1978). The established practice reflects a reasonable and workable accommodation of the traditional role of the grand jury and the interest of a witness to obtain protection against compulsory

---

[1] The argument has been advanced that *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), provide a legal and conceptual basis to support a constitutional right to counsel in the grand jury context. *See Hixson, Bringing Down The Curtain on the Absurd Drama of Entrances and Exits — Witness Representation in the Grand Jury Room,* 15 *Am.Crim.L.Rev.* 307 (1978); *Meshbesher, Right to Counsel Before Grand Jury,* 41 F.R.D. 189 (1967). *See generally,* National Lawyers Guild, *Representation of Witnesses Before Federal Grand Jury* §7.5 (rev. 2d ed. J. Reif 1977).

self-incrimination in the absence of a legislative enactment.

Close scrutiny of the various provisions of section 16-5-204(4)(d), C.R.S. 1973 (1977 Supp.), reveals that the legislature intended to abolish the established practice and substitute a system which expands the protections afforded grand jury witnesses while insuring continued efficacy of the grand jury process. The Colorado statute requires that attorneys take an oath of secrecy and prohibits such attorneys from representing more than one witness in a single criminal investigation without grand jury permission. Nothing is more obvious than that the purposes to be served by the statute could be routinely evaded if attorneys were permitted to choose to remain outside the grand jury room and avoid the statute's various provisions relating to witness' counsel. We conclude, therefore, that the legislative enactment of comprehensive provisions concerning the right of counsel to appear in the grand jury room negates the assumption that the prior practice continues to exist as an alternative. No longer is a witness permitted to leave the grand jury room to consult counsel after the grand jury asks a potentially incriminating question. The statutory procedure is intended to not only protect the rights of the witnesses that appear before the grand jury, but is also directed at conservation of the time of the grand jury. By affording every witness the right to counsel in the grand jury proceeding, the General Assembly has provided a means for protecting the constitutional rights of every witness, while avoiding the delay occasioned by the witness leaving the grand jury room to consult with counsel.

## I.
### Equal Protection

The trial court's conclusion that the oath requirement violated rights to equal protection under the Fourteenth Amendment to the United States Constitution was grounded in the incorrect assumption that counsel could refuse to take the oath and provide counsel outside the confines of the grand jury room. Based upon that assumption, the trial court found that counsel physically present inside the grand jury room were impermissibly treated differently than attorneys who provided counsel outside the grand jury room. Absent a rational basis for the classification, the court concluded that equal protection guarantees were violated.

The fallacy of the court's analysis rests upon its assumption that the prior practice continues as an alternative to the legislative scheme. It does not. Consequently, the statute does not create a classification subject to challenge under the equal protection clause.

## II.
### Choice of Counsel

The trial court did not expressly hold that the prohibition against multiple representation contained in section 16-5-204(4)(d), C.R.S. 1973 (1977 Supp.), was unconstitutional. It did, nonetheless, endorse the

argument that the oath requirement precluded an attorney from representing more than one witness before a particular grand jury investigation and, therefore, infringed upon the witness' right to counsel of his own choice. We disagree.

It is well-established that a defendant's choice of retained counsel should not be unnecessarily obstructed. *United States v. Seale,* 461 F.2d 345 (7th Cir. 1972); *United States v. Sheiner,* 410 F.2d 337 (2d Cir.), *cert. denied,* 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969). The right to counsel guaranteed by the Sixth Amendment, however, does not include an absolute right to counsel from a particular lawyer. *United States v. Poulack,* 556 F.2d 83 (1st Cir. 1977), *cert denied,* 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977); *United States v. Robinson,* 553 F.2d 429 (5th Cir. 1977), *cert. denied,* 434 U.S. 1016, 98 S.Ct. 735, 54 L.Ed.2d 761 (1978); *United States v. Bernstein,* 533 F.2d 775 (2d Cir. 1976), *cert. denied,* 429 U.S. 998, _____ S.Ct. _____, _____ L.Ed.2d _____, (1978); *Carey v. Rundle,* 409 F.2d 1210 (3d Cir. 1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). The court in *Carey v. Rundle, supra,* set forth the relevant consideration:

"Desirable as it is that a defendant obtain private counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice. . . ."

The danger inherent in multiple representation of grand jury witnesses directly implicates society's interest in grand jury secrecy and effectiveness. As a practical matter, attorneys will rarely be able to totally eliminate what has been discovered in a prior grand jury appearance when offering counsel to a subsequent witness. Successive representation of various witnesses in a single criminal investigation will inevitably result in the accumulation of knowledge which is helpful to the witness who is called to testify last. No grand jury witness, however, is entitled to be furnished with information to assist him in the evasion of issues or the concealment of facts.

The Pennsylvania Supreme Court recognized the potential impairment of grand jury secrecy which is involved in multiple representation in *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975), *affirmed on reargument,* Pa., 352 A.2d 11 (1975), *appeal dismissed and cert. denied,* 423 U.S. 1083, 96 S.Ct. 873, 47 L.Ed.2d 94 (1976):

"It is also manifest in the order of the supervising judge that no two of the subpoenaed witnesses who are parties to this petition may be represented by the same counsel. This portion of the order is essential to secure the secrecy of the grand jury proceeding. We do not mean to imply that multiple representation will never be tolerated at the grand jury level. Here, however, where each witness was a potential defendant, and the Court received information that the testimony of each officer might be expected

to incriminate one or more of the other witnesses, and where the extent of the possible multiple cross-involvement in criminal activity is known to the Court but hidden from the individual witnesses by the requirements of secrecy, it is inappropriate for the supervising judge to permit multiple representation."

Recent court decisions which have upheld the disqualification of an attorney who has sought to represent more than one witness in a single grand jury investigation have been based upon a balancing of the interests of the witness in representation before the grand jury and society's interest in effective grand jury investigations. *In re Investigation Before the February, 1977, Lynchburg Grand Jury,* 563 F.2d 652 (4th Cir. 1977); *In re Gopman,* 531 F.2d 262 (5th Cir. 1976); *Pirillo v. Takiff, supra; see* Note, *Supervising Multiple Representation of Grand Jury Witnesses,* 57 *B.U.L.Rev.* 544 (1977). The court, in *In re Investigation Before the February, 1977, Lynchburg Grand Jury, supra,* determined that the balance may favor the denial of multiple representation in a particular case:

"On the whole case, we think there is a conflict of two principles. The first one is the entitlement of the witnesses to representation by an attorney in grand jury proceedings whether as a matter of federal procedural law or constitutional right. The second is the right of the grand jury to pursue its investigation functions, which includes the right of the public to every man's testimony. And not to be forgotten is the right of the courts to control their own officers, the attorneys. 'When two principles come in conflict with each other, the court must give them both a reasonable construction, so as to preserve them both to a reasonable extent.' *Mandujano,* 425 U.S. at p. 590, 96 S.Ct. at p. 1783. (Mr. Justice Brennan concurring and quoting from *United States v. Burr,* 25 Fed.Cas. pp. 38, 39, No. 14692 (e) (C.C.Va. 1807)). We think when a conflict of interest appears from the record, as it does here, which may affect the grand jury's investigative function and may deprive the public of the testimony of a witness, that the district court, in its discretion, may take appropriate action to remove the conflict, which is all the district judge did in this case. And we think this may be done although it may deprive a witness of a particular lawyer. It does not deprive him of the right to be represented at all, and so both principles are preserved as well as may be."

Our General Assembly, confronted with the potential detrimental impact of multiple representation upon grand jury secrecy and efficacy, effected a reasonable accommodation of the various interests. All witnesses before a grand jury are now statutorily entitled to counsel, although not necessarily the advice of a particular attorney. No attorney who provides counsel in the grand jury room, however, may represent more than one witness in a single investigation without grand jury permission. The prohibition against multiple representation was intended

to preserve the secrecy and effectiveness of the grand jury process and was a constitutionally permissible limitation of the right to counsel.

## III.

### Due Process

The third ground for the trial court's decision was that the oath requirement violated due process protections. We have previously held that a statute which bears no rational relationship to the legislative end sought to be achieved violates due process and is unconstitutional. *People v. Taylor,* 189 Colo. 202, 540 P.2d 320 (1975). Moreover, a statute must be narrowly drawn to effect the legislative purpose and must not be overbroad. *See People v. Von Tersch,* 180 Colo. 295, 505 P.2d 5 (1973).

In *United States v. Amazon Industrial Chemical Corp.,* 55 F.2d 254 (D.Md. 1931), the court articulated the following reasons for grand jury secrecy:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*See also Pittsburg Plate Glass Co. v. United States,* 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *In re Biaggi,* 478 F.2d 489 (2d Cir. 1973).

We find that the statutory oath requirement is rationally related to further the legitimate interest in grand jury secrecy. All attorneys must take the oath prior to being allowed to provide counsel to a witness. The statute simply extends the general rule that all persons associated with the grand jury process be sworn to secrecy. *See* Crim. P. 6.2, 6.3.

Similarly, the oath requirement does not proscribe constitutionally protected rights. We have not been cited any case which holds that the interest in grand jury secrecy is superceded by free speech considerations. Consequently, we find the trial court's conclusion without merit.

Accordingly, the ruling is reversed.

MR. CHIEF JUSTICE PRINGLE concurring in part and dissenting in part.

MR. JUSTICE GROVES and MR. JUSTICE CARRIGAN dissenting.

MR. CHIEF JUSTICE PRINGLE dissenting and concurring:

I dissent from that portion of the majority opinion which holds that enactment of Section 16-5-204(4)(d), C.R.S. 1973 (1977 Supp.) effected an implied repeal of the practice of permitting a grand jury witness to consult with an attorney outside the grand jury room concerning potentially incriminating questions.

I agree with the portion of the majority opinion that the provisions requiring an attorney present in the grand jury room to take an oath of secrecy are valid.

I do not agree with the majority position that the grand jury has the power to forbid a lawyer from representing two or more clients before a grand jury. I think any citizen has a constitutional right to employ counsel of his choice providing that counsel wishes to represent him. I do not believe that any grand jury has the authority to deprive him of that right.

MR. JUSTICE CARRIGAN dissenting:

I respectfully dissent.

First, I take issue with the majority opinion's holding that grand jury witnesses have no right to consult with counsel *outside* the jury room, in the absence of a statute providing such a right. While we have held, in *People v. Downer,* 192 Colo. 264, 557 P.2d 835 (1976), that a grand jury witness may not insist on the presence of his attorney *inside the grand jury room,* we have never addressed the fundamental issue whether, independent of statute, a witness has a right to consult counsel *outside* the grand jury room. The majority opinion in effect assumes in passing a negative answer to that crucial threshold question, virtually without discussion.

I am aware that, in a plurality opinion, four members of the United States Supreme Court have asserted that the Sixth Amendment does not guarantee a witness counsel *inside* the grand jury room because at that point no "criminal proceedings" have yet been instituted against him. *United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). But a plurality opinion is not precedent. And not even a plurality of the *Mandujano* court opined that there is no constitutional right to counsel *outside* the grand jury room. In fact Justice Brennan, joined by Justice Marshall, pointed out in an opinion concurring in the result, that no Supreme Court case had ever squarely presented the question of a grand jury witness' right to counsel. *Id.* at 603, 96 S.Ct. 1789, at 48 L.Ed.2d at 238. As Justice Brennan pointed out, many legal scholars have argued that there may well be a constitutional right to counsel before the grand jury in view of the expanding right to counsel and its "substantive affinity" to and consequent "co-extensiveness" with the privilege against self-incrimination. *Ibid.* And *see Id.* n. 20.

Even if the Supreme Court had decided that the United States Constitution does not guarantee counsel to grand jury witnesses, there would remain the serious question whether such a right is guaranteed by the Colorado Constitution, either in Article II, sections 16 and 18, or elsewhere. It has been well said that, "State courts, no less than federal, are and ought to be the guardians of our liberties."[1] Therefore it follows that, "State courts cannot rest when they have afforded their citizens the full protections of the federal constitution. State constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law."[2]

This court has previously recognized that it is free to evoke state constitutional provisions in adopting broader protections of fundamental rights than those espoused by the United States Supreme Court. *E.g., People v. Hayhurst*, 194 Colo. 292, 571 P.2d 721 (1977).

My point in *not* that there necessarily *exists* a constitutionally guaranteed right to counsel in grand jury proceedings. My point is rather that this court should not merely assume that no such right exists, and base other holdings on that assumption. The right — if it exists — is too important to be brushed aside so lightly. Rather we should directly confront and decide the question after carefully considering the authorities which have acknowledged that there is a *right* to consult freely with counsel immediately outside the grand jury room. *See, e.g., United States v. Capaldo*, 402 F.2d 821 (2d Cir. 1968); *United States v. DeSapio*, 299 F.Supp. 436 (S.D.N.Y. 1969).

As the majority opinion itself recognizes, there are strong arguments that *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), provide a legal and conceptual basis for holding that there is a constitutional right to counsel in the grand jury context. Majority opinion, (at p. 5, n. 1 of the slip opinion) 195 Colo. 494, 580 P.2d 25. *See also* the persuasive argument of Mr. Justice Brennan in *United States v. Mandujano*, 425 U.S. 564, 602-09, 96 S.Ct. 1768, 1789-1792, 48 L.Ed.2d 212, 237-242 (1976) (concurring opinion).

In my opinion, the answer to this question is neither so clearcut nor obviously well-settled as the majority opinion would seem to indicate. The potential and reality of grand jury abuse have been well-documented,[3] and

---

[1] *W. Brennan, State Constitutions and the Protection of Individual Rights*, 90 *Harv. L. Rev.* 489, 491 (1977). *See also S. Mosk, The New States' Rights*, 10 *Calif. L. Enforcement* 81, 82 (1976).

[2] 90 *Harv. L. Rev.* at 491.

[3] *E.g., Rodis, A Lawyer's Guide to Grand Jury Abuse*, 14 *Crim. L. Bull.* 123 (1978); *Shannon, The Grand Jury: True Tribunal of the People or Administrative Agency of the Prosecutor?*, 2 *New Mexico L. Rev.* 141 (1972); *Note, Grand Jury Proceedings: The Prosecutor, the Trial Judge, and Undue Influence*, 39 *U. Chi. L. Rev.* 761 (1972).

this real danger warrants our close consideration of the need for protection of the rights of witnesses before those bodies. To hold, as the court does today, that there is *no* constitutional right to counsel at grand jury proceedings, is a dangerous precedent.

Second, even assuming *arguendo* that prior to enactment of section 16-5-204(4)(d), C.R.S. 1973 (1977 Supp.), consulting counsel outside the grand jury room was only a "practice" and not a right, I strongly disagree with the majority opinion's premise that enactment of that statute effected an "implied repeal" of the long-standing practice. The prior practice was certainly well-known at the time of the statute's passage, and any legislative intent to render the new statutory procedures exclusive could easily have been expressed. The lack of any such expression evinces an intention that the established practice remains as an alternative.

In construing any statute, the starting point must be the plain, ordinary meaning of the words chosen by the General Assembly to express its intention.

The language of section 16-5-204(4)(d) clearly reflects an intent that its procedures be alternatives to, rather than exclusive of, the prior practice. For example, the statute provides that a witness "*shall* be entitled to the assistance of counsel during any time that such witness is being questioned in the presence of such grand jury," but states that "counsel *may* be present *in the grand jury room* with his client during such questioning." (Emphasis added.)

This juxtaposition of mandatory and permissive language in the same sentence clearly indicates an intent to provide a statutory *right* to the assistance of counsel, but to *permit* the use of counsel inside the grand jury room at the *witness' option.* The majority opinion, however, misconstrues this plain language to require that if a witness desires the assistance of counsel at all, counsel must function within the grand jury room and therefore be subject to the oath requirement and the limitation on representing multiple clients.

With similar import, section 16-5-204(4)(d) states that an "[a]ttorney *present in the grand jury room* shall take an oath of secrecy." (Emphasis added.) Obviously that language implies that an attorney *not* "present in the grand jury room" need not take the oath. Had the legislature intended the construction adopted by the majority opinion the statute would have simply required the oath of all attorneys representing clients at grand jury proceedings, not just of those "present in the grand jury room." Rather, as the trial court concluded, the statutory language clearly implies that an attorney may choose not to take the oath and meet his client outside the grand jury room.

Similarly, and with the same import, other language of the statute prohibits multiple client representation for attorneys who "provide counsel *in the grand jury room.*" (Emphasis added.) This language implies that

there are no restrictions on multiple client representation imposed on attorneys who provide counsel *outside* the jury room, since such attorneys would not hear the grand jury proceedings and therefore would not be able to communicate what has been heard to other clients who are scheduled to appear as later witnesses before the grand jury, that implication accords with the statute's purpose to protect secrecy of grand jury proceedings.

While I recognize that principles of statutory construction dictate that a statute fairly susceptible to more than one interpretation should be construed so as to uphold its constitutionality, if possible, I am equally mindful of our obligation to uphold the state constitution. In this case only a strained construction of section 16-5-204(4)(d) can support the conclusion that its procedures were intended to be exclusive and to forbid the prior practice. The majority opinion, in attempting to avoid the strong equal protection challenge raised against the statute, simply ignores the statute's plain language. In my opinion, we should seek to determine the clearly stated intent of the statute unburdened by any concern for the constitutional consequences. Then, and only then, should we consider and decide the equal protection claim.

Even if the majority opinion's construction of section 16-5-204(4)(d) were correct, the statute's attempt to forbid lawyers from representing two or more clients before a grand jury, without the grand jury's consent, unconstitutionally infringes on this court's authority to regulate the practice of law.

It is well-established that regulation of law practice in Colorado is a matter exclusively in the province of this court. *People v. Buckles,* 167 Colo. 64, 453 P.2d 404 (1968); *Denver Bar Association v. Public Utilities Commission,* 154 Colo 273, 391 P.2d 467 (1964). Attempted exercise of that power by any other body violates the constitutional doctrine of separation of powers. *Colo. Const.,* Art. III.

The statute here in question unduly restricts the right of every person to free choice of an attorney. Moreover it encroaches on this court's authority to regulate attorney's representation of multiple clients by purporting to empower each grand jury to determine whether each attorney appearing before it will be permitted to represent more than one client. Prior to enactment of this statute, representation of multiple clients in the same matter was limited only by the canons of ethics promulgated by this court, *e.g.,* the conflict of interest restrictions set out in Canon 5 of the Code of Professional Responsibility. Under those canons several clients who desired to be represented in a matter by the same attorney, whether to economize on legal fees or otherwise, were free to so elect. Even if there were a conflict of interest among the multiple clients, they could all employ the same attorney provided they consented to the joint representation with full knowledge of the conflict. Now, an attorney's right to represent more than one client before a grand jury depends, not merely on the uniform,

statewide guidelines established by this court, but on the vicissitudes of each temporary, local grand jury, unrestrained by any rules in deciding which attorney may, and which may not, represent more than one client.

In effect, section 16-5-204(4)(d) removes regulation of one aspect of law practice from the supervisory power of this court and places it in the hands of various groups of lay grand jurors unassociated with this court and unguided by any standards. The legislature's power to regulate the grand jury system,[4] does not authorize it to interfere with the judiciary's long-recognized exclusive authority to regulate the practice of law.

Nor is this infirmity justified by recitation of the legislative interest in preserving the secrecy of grand jury proceedings. Without denying the validity of that legislative concern, it nonetheless may not be effected by a means that unconstitutionally invades judicial prerogatives. If the legislature feels that additional rules governing attorneys are needed to protect grand jury secrecy, an appropriate, mutual respect due between equal, coordinate branches of government requires that that need be brought to this court's attention together with any suggested additions to the rules governing conduct of attorneys.

Today's majority interpretation of section 16-5-204(4)(d), by forbidding any one attorney from representing more than one grand jury witness, will impose needless expense and duplication of legal services. Grand jury witnesses with nearly identical interests (*e.g.*, the many members of a labor union) will each have to retain and pay a separate attorney to prepare for and appear at the proceedings, even where there is no conflict of interest. There has been no suggestion of attorney misconduct requiring this new rule. Any attorney who by misconduct might violate grand jury secrecy rules or otherwise prejudice the administration of justice before a grand jury can be dealt with by this court's grievance committee. A blanket prohibition by the legislature against multiple representation is unjustified and impermissible.

Finally, even assuming *arguendo* that the general assembly possesses the power to regulate multiple client representation before grand juries, the method adopted in section 16-5-204(4)(d) obviously amounts to unconstitutional delegation of power.

As a general rule the legislature may validly delegate legislative power to an administrative body only if it provides sufficient standards to guide the exercise of that power. *E.g., Elizondo v. State,* 194 Colo. 113, 570 P.2d 518 (1977).

In this case, however, the general assembly has delegated one aspect of the power to regulate the grand jury system *to the body that is to be regulated,* and, in addition, has done so with *no limitation* on any grand

---

[4] *Colo. Const.,* Art. II, Sec. 23.

jury's exercise of that power. The result is that each grand jury, a non-continuing body of lay citizens, has been granted the complete and unfettered discretion to determine on an entirely *ad hoc* basis whether a particular attorney will be permitted to represent more than one client. There are absolutely no procedural standards to guide or restrict the exercise of that power, and there are no safeguards against its abuse.

Therefore, *even if* the representation of multiple clients before grand juries were a matter for legislative control, and *even if* grand juries were administrative agencies to which legislative power could appropriately be delegated, the delegation effected by section 16-5-204(4)(d) would still be a blatant violation of well-established constitutional principles governing delegation of legislative powers. *Elizondo v. State, supra.*

I am authorized to state that MR. JUSTICE GROVES joins in this dissent.